UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

ANTHONY C. PITRE                            CIVIL ACTION NO. 06-1802

VERSUS                                      JUDGE STAGG

DAVID WADE CORRECTIONAL                     MAGISTRATE JUDGE HORNSBY
CENTER, ET AL


**REPORT AND RECOMMENDATION**

**Introduction**

Anthony Pitre ("Plaintiff") is a convicted Louisiana prisoner who is HIV positive. He complains that prison officials at David Wade Correctional Center wrongfully refused, based on Plaintiff's medical status, to allow him to participate in a work release program. Plaintiff alleges that he was sufficiently healthy to participate in the program and that the denial was a violation of Title II of the Americans with Disabilities Act ("ADA") and provisions of the United States Constitution.

Plaintiff's original complaint named 10 defendants, ranging from Secretary Richard Stalder and Warden Venetia Michael to nurses and an ARP screening officer. Defendants filed a Motion to Dismiss (Doc. 22) that is now before the court. Plaintiff responded to the motion by filing an Amended Complaint (Doc. 26) that added some factual allegations, modified the forms of relief Plaintiff requests, and added as new defendants the State of Louisiana and the Louisiana Department of Corrections.

**Relevant Allegations**

When ruling on a motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2000). Accordingly, Plaintiff's allegations in his original and amended complaints will be set forth herein as if true, but only for purposes of analyzing the motion.

Plaintiff arrived at David Wade in April 2006 and was placed in the infirmary. He was released from the infirmary 10 days later, and he immediately began to seek assistance from classifications officers to be re-screened for work release status that he had enjoyed while housed at another Louisiana prison.

Plaintiff was told that he needed to have a medical release to be re-screened for work release. Plaintiff was also told to send a written request to Head Nurse Pam Austin to be placed on call-out to be seen by Dr. Pam Hearn, the prison medical director. Plaintiff wrote to Nurse Austin as directed, and he also wrote a similar request to Nurse Linda Tucker, an infectious disease nurse. Nurse Tucker responded, "as I told you verbally on 5/16/06, your medical release must be given by doctor Hearn, our medical director." Two days later, Nurse Austin responded to Plaintiff's request by writing "you are aware of your diagnosis and the treatment it requires. No future correspondence from you would be appreciated."

Plaintiff spoke to Assistant Warden Michelle Dauzat and (apparently) presented an argument based on the ADA. Dauzat stated that she was aware of the law, but Plaintiff was not going to participate in work release because he was HIV positive and on medication.

Plaintiff filed an ARP grievance about the issue. He received a response from Deputy Warden Jerry Goodwin that had been prepared by Nursing Director Debbie Scriber. The response denied relief. It explained that the level of care assignment determined by the physician dictates eligibility for work release, in accordance with a DOC regulation. Because Plaintiff was classified level of care (2), the response explained, he did not meet the criteria for work release. Plaintiff filed an appeal to Department headquarters, but it was also denied.

In the meantime, Plaintiff also sent a request to Nursing Director Debbie Scriber to be evaluated by Dr. Hearn. Plaintiff wrote that he had been seen by a physician at the LSU Viral Disease Clinic who said that Plaintiff, based on his lab results, was healthy enough to participate in work release. Plaintiff never received a response from Scriber.

Plaintiff also sent a written request to Dr. Hearn that invoked the ADA, explained that Plaintiff had performed strenuous outdoor work in the past, and asked that he be put on call-out for an evaluation of his level of care. He received no response. Plaintiff also sent letters complaining about his situation to Warden Michael, Attorney General Charles Foti, and others.

Plaintiff was later evaluated by Nurse Tucker, who told him that he was in good health but that he would still need Dr. Hearn to reassign his level of care from (2) to (3) to be eligible for work release. Plaintiff sent written requests to Dr. Hearn and Nurse Austin for an evaluation. He did not receive a response from Dr. Hearn, but Nurse Austin sent a response that included the statement "Nurse Tucker denies telling you that you are level of

care (3). Because of your AIDS/HIV diagnosis you do not qualify for a level of care (3) status." Nurse Austin later called Plaintiff into the infirmary and told him that David Wade does not send inmates to work release who are HIV positive and taking medication. Plaintiff sent more letters, including one to Secretary Stalder, and complained that his treatment was unlawful.

Plaintiff was placed on call-out to see Dr. Hearn, but she twice cancelled. At the third call-out, Dr. Hearn told Plaintiff that he had a doctor's appointment at the LSU Viral Disease Clinic and that he would need one of the LSU physicians to write a note to Dr. Hearn with a recommendation for reassignment to level of care (3) for Plaintiff to participate in work release.

A physician at the LSU Viral Disease Clinic told Plaintiff that he was "most certainly" healthy enough for work release and had been so since his first visit. The physician wrote a note to Dr. Hearn stating that Plaintiff was healthy and suggested that Plaintiff be allowed to participate in a work release program. He added that Plaintiff's viral load was undetectable, which was excellent.

As these events were occurring, Plaintiff sought legal assistance from Lambda Legal Defense and Education Fund. The HIV project director with that organization wrote letters to Secretary Stalder and Warden Michael to urge that David Wade's blanket exclusion of people living with HIV from participation in the work release program violates the ADA. The letters can be viewed at Doc. 1, pp. 2-9. None of the letters or complaints were

successful. The letter from the LSU physician apparently did not yield the results desired by Plaintiff because he later filed this civil action.

**Declaratory and Injunctive Relief: Moot**

After Plaintiff filed this civil action, he was transferred to a prison in DeQuincy and, more recently, Pineville. See Docs. 14 and 31. Plaintiff's original complaint requested declaratory relief and equitable relief necessary to prevent what Plaintiff alleged was continuing discrimination against HIV positive inmates who wish to participate in the work release program. Defendants argue that Plaintiff's transfer renders those claims moot. They are correct.

A prisoner's transfer to another facility "render[s] his claims for declaratory and injunctive relief moot." Herman v. Holiday, 238 F.3d 660, 665 (5th Cir. 2001) (claims for injunctive and declaratory relief based on exposure to asbestos were mooted by transfer to another prison). See also Cooper v. Sheriff, Lubbock County, 929 F.2d 1078, 1084 (5th Cir. 1991) (claims for injunctive relief based on denial of food at prior jail were moot). Any suggestion of injunctive relief based on the possibility that Plaintiff might some day be transferred back to David Wade "is too speculative to warrant relief." Herman, 238 F.3d at 665.

Plaintiff's amended complaint appears to have dropped any claim for equitable or injunctive relief. In any event, the above authorities compel a recommendation that any claims for declaratory or injunctive relief be dismissed as moot.

**Compensatory Damages: None for Work Release Denial**

Defendants argue that Plaintiff is not entitled to recover compensatory damages for emotional distress or the like even if he proves his constitutional or ADA rights were violated. They base the argument on the statutory provision that: "No federal civil action may be brought by a prisoner confined to a jail, prison, or other correctional facility, *for mental or emotional injury* suffered while in custody without a prior showing of *physical* injury." 42 U.S.C. § 1997e(e) (emphasis added). The Fifth Circuit has joined the majority of federal circuits and held that the statute bars the recovery of compensatory damages for mental or emotional injury absent a showing of physical injury, even though the violations at issue (such as First Amendment claims) are not usually accompanied by physical injury. Geiger v. Jowers, 404 F.3d 371, 374-75 (5th Cir. 2005) (no compensatory damages available on claim of deprivation of pornographic magazines). The statute applies to both Section 1983 and ADA claims. Davis v. District of Columbia, 158 F.3d 1342, 1348-49 (D.C. Cir.1998). The statute and related jurisprudence bar Plaintiff's claims for compensatory damages due to his allegedly wrongful exclusion from work release eligibility. Any such claims should be dismissed.[1]

The rejection of claims for compensatory damages, combined with a dismissal of claims for declaratory or injunctive relief, might seem to put an end to the aspects of this case

---

[1] It is premature, on mere pleadings review, to determine the applicability of the statute to Plaintiff's allegation that Betty Ennis maliciously "pulled" his HIV medication for three months, causing health problems. That allegation is addressed below.

based on the allegedly wrongful exclusion from work release eligibility. But there are other forms of relief potentially available. The Supreme Court has recognized that nominal damages[2] may be available for the vindication of a constitutional right absent any proof of actual injury. Punitive damages[3] could also be available to deter violations of constitutional rights, and Plaintiff has specifically prayed for them. Some courts have recognized that nominal or punitive damages are not "for mental or emotional injury" within the meaning of Section 1997e(e), so those forms of damages are not barred by the physical injury requirement. In <u>Whitman v. Washington</u>, 113 Fed.Appx. 605, 606 (5th Cir. 2004), the Fifth Circuit found that the plaintiff prisoner had no claim for actual damages because he suffered no physical injury. But, the Court continued: "We address the merits of Whitman's underlying Eighth Amendment contentions, as Whitman could have received nominal damages had he prevailed on those contentions in the district court." In <u>Herron v. Patrolman #1</u>, 111 Fed.Appx. 710, 712 (5th Cir. 2004) the Court explained: "Physical injury is a predicate to an award of compensatory damages for mental or emotional injury; its absence does not necessarily preclude recovery of, e.g., injunctive relief or nominal damages for constitutional injuries." <u>See</u> <u>also</u> <u>Boyd v. Stalder</u>, 2006 WL 3813711 (W.D. La. 2006) (collecting cases from other circuits).

---

[2] Nominal damages are usually a token award of $1 or other small amount. <u>Williams v. Kaufman County</u>, 352 F.3d 994, 1014-15 (5th Cir. 2003).

[3] Punitive damages are available in a Section 1983 case only "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." <u>Smith v. Wade</u>, 103 S.Ct. 1625 (1983).

The theoretical potential remains that Plaintiff could prevail on constitutional claims under Section 1983 and recover nominal and punitive damages (but his ability to recover punitive damages from the DOC or State of Louisiana is subject to the Eleventh Amendment, as discussed below). As for Plaintiff's ADA claim, Plaintiff may not recover punitive damages under Title II. <u>Barnes v. Gorman</u>, 122 S.Ct. 2097, 2103 (2002).

**ADA Claims: Individual Defendants**

    **A. Direct ADA Claims**

Plaintiff alleges in his amended complaint that several of the individual defendants are liable because he alerted them to the alleged violations of the ADA and they did not remedy the situation to Plaintiff's satisfaction. The original complaint states "all defendants are sued in their individual/personal capacity." Courts have held that state officials may not be sued in their individual capacities directly under the ADA. <u>Alsbrook v. City of Maumelle</u>, 184 F.3d 999, 1005 n.8 (8th Cir. 1999); <u>Gordon v. Pettiford</u>, 2007 WL 679592, *9 (S. D. Miss. 2007). That is because Title II provides disabled persons redress for discrimination by a "public entity." 42 U.S.C. § 12132. That term, as defined within the statute, does not include individuals. 42 U.S.C. § 12131(1). Thus, any claims under the ADA against the individual defendants should be dismissed.[4]

---

[4] The Fifth Circuit has held that state officers, sued in their *official* capacities for *prospective* relief (declaratory and injunctive type relief), are proper defendants under Title II of the ADA and are not immune under the Eleventh Amendment. <u>McCarthy v. Hawkins</u>, 381 F.3d 407 (5th Cir. 2004). As noted above, any claims by Plaintiff for prospective relief have been rendered moot by his transfer to another prison facility.

**B. ADA Claims as Basis for Section 1983 Claim**

Plaintiff also alleges that the individuals' failure to remedy the alleged violations of the ADA violated his rights secured under the Equal Protection and Due Process clauses. Constitutional violations are enforceable through 42 U.S.C. § 1983, but the courts have held that a Plaintiff is precluded from bringing a Section 1983 action against a defendant in his or her individual capacity to vindicate or enforce rights conferred upon him by Title II of the ADA. That is because the ADA has its own comprehensive remedial scheme that bars assertion of its substantive provisions through Section 1983 in search of remedies or procedures that might not be allowed by the more specific provisions of the ADA. Lollar v. Baker, 196 F.3d 603 (5th Cir. 1999); Cole v. Velasquez, 67 Fed. Appx. 252 n.11 (5th Cir. 2003). The issue recently arose in a prison setting when an inmate alleged that prison officials failed to bring a laundry facility into compliance with the ADA. The Fifth Circuit stated that the prisoner "may not bring a 42 U.S.C. § 1983 action for damages against a state official in his individual capacity to vindicate rights conferred by Title II of the ADA." Rivera v. Dawson, 2007 WL 1223914 (5th Cir. 2007).

Based on the cited authorities, any claims Plaintiff asserts directly against the individual defendants in their individual capacities, by attempting to enforce the ADA through Section 1983, should be dismissed. Plaintiff has raised other grounds for Section 1983 claims against some of the individual defendants, and those claims will be discussed below.

**ADA Claims: State and Department**

It has been recommended that all ADA-based claims against individual defendants be dismissed. After the Motion to Dismiss was filed, Plaintiff filed his amended complaint and added as defendants the State of Louisiana and the Louisiana Department of Public Safety and Corrections. Neither of those two defendants has yet appeared in this action, so only a brief discussion of the claims against them follows.

The State and the Department are entitled to Eleventh Amendment immunity from Section 1983 claims. Champagne v. Jefferson Parish Sheriff's Office, 188 F.3d 312 (5th Cir. 1999). That immunity, however, does not prevent the State and Department from being held liable for money damages under Title II of the ADA if their conduct actually violates both the ADA and the Fourteenth Amendment. U.S. v. Georgia, 126 S.Ct. 877 (2006). But, as discussed above, Plaintiff is prohibited by 42 U.S.C. § 1997e(e) from recovering compensatory damages based on denial of work release status, and all claims for prospective relief are moot because of his transfer. Punitive damages are not available under Title II of the ADA, Barnes, supra, so Plaintiff's potential recovery under the ADA appears to be limited to approximately one dollar in nominal damages.

To obtain that dollar, Plaintiff must first prevail on the merits of the ADA claim. He alleges in his amended complaint that the failure of various prison officials to correct the alleged violation of the ADA amounted to a violation of Plaintiff's rights under the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment. It has been held that HIV-infected inmates do not constitute a suspect class that is entitled to special

consideration under the Equal Protection Clause. Mofield v. Bell, 3 Fed. Appx. 441, 443 (6th Cir. 2001). A policy that discriminates against such persons but rationally furthers a legitimate state purpose would not violate equal protection principles. Id. Principles of substantive due process are judged under a similar reasonable relationship standard. See Brennan v. Stewart, 834 F.2d 1248, 1256 (5th Cir. 1988). It is not possible to further address the rational basis standards on mere pleadings review, so the discussion of the claim will go no further.

Plaintiff, if he wishes to pursue claims against the State of Louisiana and the Louisiana Department of Public Safety and Corrections, must file with the Clerk of Court, within 30 days after service of this Report and Recommendation, one copy of the complaint and amended complaint and two completed summonses for each new defendant. After those papers are provided, the Clerk of Court is directed to serve the papers by U.S. Marshal on each of the two defendants. The new defendants shall file a response to the complaint, as amended, within 20 days after service. *Failure of Plaintiff to timely submit the necessary service papers may result in dismissal of the claims against the State and Department without further notice*. If Plaintiff does not wish to pursue these two defendants, in light of the limited available relief, he should notify the court in writing.

**Brenda Acklin**

Plaintiff alleges in his original and amended complaints that Brenda Acklin, a records custodian "changed/altered plaintiff's judicially imposed sentence" to reflect a discharge date three years later than what Plaintiff contends is the proper date. Plaintiff alleges that this

action violated his Due Process rights and Louisiana constitutional law. He asserts that Acklin was notified of his complaint through the first step ARP process, but he does not allege that he exhausted the ARP process before he filed this suit.

Acklin joined in the Motion to Dismiss, but the memorandum in support contains no argument that is particularly directed at this claim. The court may not pursue the exhaustion defense until such time as it has been pleaded by Acklin and the appropriate documents presented to the court, and the court need not otherwise discuss the potential merits of the claim or defenses thereto absent any particular argument in the motion. The claims against Acklin should, therefore, survive the Motion to Dismiss.

**Betty Ennis**

Plaintiff alleges in his original and amended complaints that Betty Ennis "pulled" his HIV medication in September 2006, resulting in the malicious and sadistic deprivation of his medication for approximately three months. Plaintiff alleges that Ennis was aware that her actions would have a devastating impact on his health. Plaintiff alleges that his CD-4 count became dangerously low and caused great harm to his health and safety. Plaintiff invokes the ADA and the Eighth Amendment with respect to these allegations.

Ennis joined the Motion to Dismiss, but the memorandum in support contains no particular argument with regard to these claims against her. As recommended above, the ADA-based claims against the individual defendants (including Ennis) should be dismissed.

Plaintiff's Section 1983 claim against Ennis for violation of the Eighth Amendment has not been attacked by the motion, so it need not be addressed at this time.[5]

**Stalder, Michael, Dauzat, Huff and Moss**

Defendants Stalder, Michael and Dauzat responded to the original complaint by asserting a qualified immunity defense to any Section 1983 claims against them. They pointed out that the original complaint contained few allegations against them. Plaintiff alleged that Secretary Stalder was informed by letter from Plaintiff and the Lambda legal organization of the alleged unlawful denial of participation in work release eligibility, but he did not respond or cure the problem. Plaintiff made a similar allegation against Warden Michael, though he says she responded to the Lambda letter by denying the allegations. Plaintiff alleged Ms. Dauzat told him that she was aware of the ADA but that Plaintiff was nonetheless not going to work release because he was HIV positive and on medication. Defendants Angie Huff and Becky Moss responded to the original complaint by pointing out that it contained no mention of them other than in the list of defendants. They, too, raised a qualified immunity defense.

Plaintiff responded by filing his amended complaint. It sets forth substantially similar allegations against each of the five defendants under discussion. Plaintiff alleges that he notified the defendants by letter or grievance of what he contends was an ADA violation.

---

[5] For a convicted prisoner to prevail on a claim that his medical care (or lack of care) violated the Constitution, he must prove that prison or jail officials were "deliberately indifferent" to his "serious medical needs." Estelle v. Gamble, 97 S.Ct. 285, 291 (1976).

Plaintiff asserts that each defendant's "failure to act (omission) to correct/remedy this violation of federal law" violated rights guaranteed by the Equal Protection and Due Process Clauses.

Plaintiff "does not have a federally protected liberty interest in having [his] grievances resolved to his satisfaction." Geiger v. Jowers, 404 F.3d at 373, 74. Furthermore, supervisory officials over a large institution or state agency "cannot be expected to intervene personally in response to every inmate letter they receive." Johnson v. Johnson, 385 F.3d 503, 526 (5th Cir. 2004). All indications are that the policy Plaintiff attacks was instituted by or based upon the recommendations of the medical staff (who have not asserted the qualified immunity defense in the pending motion).

It is reasonable for supervisory prison officials to discharge their duty with regard to medical matters by relying upon medical personnel. See Jones v. Livingston, 2005 WL 3618316 (S.D. Tex. 2005) (applying Johnson to dismiss claims against a warden who relied upon the medical decisions of the prison physician). Plaintiff has not articulated facts that show any of the five movants at issue did any more or less than fail to respond, to Plaintiff's satisfaction, to his grievances that were based on the actions of the medical department. Plaintiff has not, therefore, alleged specific facts that show any of the five movants violated a particular constitutional right. Qualified immunity from Section 1983 claims is appropriate for defendants Stalder, Michael, Dauzat, Huff and Moss.

**State Law Claims**

Defendants makes an argument that any state law claims are barred by the Eleventh Amendment. Plaintiff's pleadings do not appear to rely on state law claims, except perhaps with respect to the claim against Brenda Acklin, but that claim also relies upon the federal constitution. The precise factual basis of that claim is not clear, and it may be subject to other defenses that would more easily resolve the claim. Under these circumstances, the court should defer addressing any application of the Eleventh Amendment to the claim until the record provides an adequate basis to do so with a reasonable degree of certainty.

**Conclusion**

Some of the claims and defendants should be dismissed, but there are claims and defendants that must remain. One remaining claim is the ADA claim against the (not yet served) State of Louisiana and Department of Public Safety and Corrections. The claim, based on the prison's denial of work release status to HIV positive inmates who take medication, requires proof of an underlying constitutional violation to survive Eleventh Amendment scrutiny and yield an award of nominal damages. If Plaintiff chooses to pursue the claim, Defendants will need to present a factual basis, probably based on affidavits from medical or other corrections officials, that provides with specificity a rational basis for the policy. The court may not speculate about such reasons when faced with a mere motion to dismiss.

The other principal claims are those against Betty Ennis, which will be judged under the deliberate indifference to serious medical need standard, and the sentence calculation

charge against Brenda Acklin. Those claims are also incapable of resolution on a mere motion to dismiss.

Accordingly;

**IT IS RECOMMENDED** that the **Motion to Dismiss (Doc. 22)** be **granted in part** as follows:

(A) All claims for injunctive or declaratory relief be **dismissed as moot**;

(B) All individual capacity claims under the ADA and efforts to enforce the ADA through Section 1983 be **dismissed with prejudice**;

(C) All claims for compensatory damages based on exclusion from work release status be **dismissed with prejudice**; and

(D) All Section 1983 claims against Defendants Richard Stalder, Venetia Michael, Michelle Dauzat, Angie Huff and Becky Moss be **dismissed with prejudice**. All other claims against those five defendants are recommended for dismissal, so this will result in their termination as parties to this civil action.

**IT IS FURTHER RECOMMENDED** that the motion be **denied** in all other respects.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another

party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 6th day of December, 2007.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE